# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIKA MENDOZA and JAMES HUNT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ELECTROLUX HOME PRODUCTS, INC.,<br><br>Defendant. | Case No. 1:17-cv-00839-LJO-SKO<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404 TO THE MIDDLE DISTRICT OF PENNSYLVANIA**<br><br>(Doc. 4) |

## I. INTRODUCTION

This is a putative consumer class action alleging that certain over-the-range microwave ovens sold by Defendant Electrolux Home Products, Inc. ("Electrolux") contain defective stainless steel handles that heat to excessive temperatures when the cooking surface below is in use. (*See* Doc. 1-1 ("Compl.").) Plaintiff Erika Mendoza lives in Modesto, California, and alleges she purchased a microwave containing a defective handle at a Direct Appliance store in Modesto. (Compl. ¶ 14.) Plaintiff James Hunt lives in Bakersfield, California, and alleges he purchased a microwave containing a defective handle at a Lowe's store in Bakersfield. (*Id.* ¶ 18.)

Electrolux, a Delaware corporation with its headquarters in Charlotte, North Carolina, moves under 28 U.S.C. § 1404(a) ("§ 1404(a)") to transfer this case to the United States District Court for the Middle District of Pennsylvania. (Doc. 4.) The Court took the matter under

submission on the papers pursuant to Local Rule 230(g). (*See* Doc. 26.) For the following reasons, the Court GRANTS Electrolux's motion and TRANSFERS this case to the Middle District of Pennsylvania.

## II. FACTUAL AND PROCEDURAL BACKGROUND

**A. The Present Action**

On May 19, 2017, Plaintiffs Mendoza and Hunt (collectively "Plaintiffs") filed suit in California state court alleging claims based upon California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and the Song-Beverly Consumer Warranty Act, Civ. Code section 1790 *et seq*. Plaintiffs allege that Electrolux's over-the-range microwaves are designed for installation on a vertical wall directly above the cooking surface of the range, and as such, are warranted as safe to use while the stovetop is on. (Compl. ¶ 2.) Plaintiffs contend that when the cooking surface below is in operation, however, the microwave's stainless steel handle "heats to excessive temperatures rendering it unfit for use as intended and exposing anyone who touches it to a substantial risk of permanent and/or serious injury." (*Id.* ¶ 3.) Plaintiffs seek to represent a class comprised of "[a]ll persons in California who purchased a Microwave with a stainless steel handle since at least February 18, 2011 and continuing to the present." (*Id.* ¶ 59.)

On June 22, 2017, Electrolux removed this action pursuant to the Class Action Fairness Act ("CAFA"), which confers federal jurisdiction where (1) there are 100 or more members in plaintiff's proposed class, (2) at least one member of the proposed class has a different citizenship than at least one defendant (*i.e.*, minimal diversity), and (3) the matter in controversy exceeds the aggregate sum of $5,000,000. 28 U.S.C. § 1332(d)(2), (5), & (6). Electrolux then moved under § 1404(a) to transfer this action to the United States District Court for Middle District of Pennsylvania, where a consolidated, earlier-filed putative class litigation is pending. (*See* Doc. 4.)

Following Electrolux's filing of the motion to transfer, Plaintiffs moved to remand the case on July 24, 2017, arguing, inter alia, that CAFA's amount in controversy requirement had not been met. (*See* Doc. 13.) On September 20, 2017, the assigned district judge denied Plaintiffs' motion to remand. (Doc. 47.)

### B. The *Rice* Consolidated Action

Prior to Plaintiffs' commencement of this suit in California state court, Plaintiffs' counsel filed a consolidated amended class action complaint in federal court in the Middle District of Pennsylvania on March 24, 2017.[1] *Rice v. Electrolux Home Products, Inc.*, Case No. 4:15-cv-00371-MWB (M.D. Pa., filed March 24, 2017) (Brann, J.). There appears to be significant factual overlap between Plaintiffs' allegations and the *Rice* consolidated action. As both the factual and procedural history of the *Rice* consolidated action are pertinent to the determination of Electrolux's motion to transfer, the Court briefly summarizes the background of that litigation below.

On February 18, 2015, Plaintiffs' counsel filed a putative class action against Electrolux on behalf of named plaintiff Elaine Rice ("Rice") styled *Rice v. Electrolux Home Products, Inc.*, Case No. 4:15-cv-0371-MWB (M.D. Pa., filed Feb. 18, 2015) (Brann, J.). (*See* Doc. 5, Declaration of Caitlin C. Blanche in Support of Def.'s Mot. to Transfer ("Blanche Decl."), ¶ 3 Ex. 1.) As in this action, Rice contends that certain over-the-range microwave ovens sold by Electrolux contain defective stainless steel handles such that the handle "can reach temperatures of over 168°F when the cooking surface below is in operation, presenting a risk of serious injury to anyone who touches the handle with a bare hand." (*Id.* Ex. 1 ¶ 1.).

Rice sought to certify two putative classes. First, she sought to certify an "Injunctive/Declaratory Relief Class" under Fed. R. Civ. P. 23(b)(2), consisting of "[a]ll persons in the United States who own a Microwave with a stainless steel handle (Part # 5304471830)." (*Id.* Ex. 1 ¶ 62.) Second, she sought to certify a class under Fed. R. Civ. P. 23(b)(3), consisting of "[a]ll persons in the Commonwealth of Pennsylvania who own a Microwave with a stainless steel handle (Part # 5304471830)" and/or all persons in "Other States" (*i.e.*, thirty-four additional states, including California, and the District of Columbia) "who own a Microwave with a stainless steel handle (Part # 5304471830)." (*Id.* Ex. 1 ¶ 63.) By Memorandum and Order entered July 28,

---

[1] Judicial notice may be taken of "undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted). Accordingly, judicial notice is taken of the complaints filed in *Rice v. Electrolux Home Products, Inc.*, in *Kukich v. Electrolux Home Products, Inc.*, Case No. 1:16-cv-03412-ELH (D. Md., filed Oct. 11, 2016) (Hollander, J.), and related court documents.

3

2015, presiding district judge Matthew W. Brann struck Rice's "Other States" subclass, finding Rice lacks standing to represent that subclass because she was not a member of that class. (*See id.* Exs. 2 & 3.)

On October 11, 2016, Plaintiffs' counsel filed another putative class action against Electrolux, this time in federal court in the District of Maryland, on behalf of named plaintiff Alex Kukich ("Kukich") styled *Kukich v. Electrolux Home Products, Inc.*, Case No. 1:16-cv-03412-ELH (D. Md., filed Oct. 11, 2016) (Hollander, J.). *See Kukich v. Electrolux Home Prod., Inc.*, Civil Action No. ELH-16-3412, 2017 WL 345856, at *1 (D. Md. Jan. 24, 2017). As Plaintiffs allege here, Kukich alleged that certain over-the-range microwave ovens sold by Electrolux contain defective stainless steel handles. *Id.* Kukich sought to certify two putative classes: (1) a Rule 23(b)(2) class consisting of "[a]ll persons in the United States who own a Microwave with a 400-Grade Stainless Steel Handle," and (2) a Rule 23(b)(3) class consisting of "[a]ll persons in the State of Maryland who own a Microwave with a 400-Grade Stainless Steel Handle that was purchased during the four (4) years preceding the filing of this action." (*Id.*)

On November 10, 2016, Electrolux moved to transfer the *Kukich* case to the Middle District of Pennsylvania pursuant to § 1404(a) for handling by Judge Brann. (Blanche Decl. ¶ 7, Ex. 5; ¶ 8, Ex. 6). On January 24, 2017, the District of Maryland granted the motion to transfer, finding that "the balance of factors strongly supports the transfer of this case to the Middle District of Pennsylvania." *Kukich*, 2017 WL 345856, at *14. With respect to the pending *Rice* action, the District of Maryland found that "the pendency of the *Rice* case in the Middle District of Pennsylvania strongly supports the transfer, for the reasons advanced by Electrolux." *Id.* at *11. In particular, the *Kukich* court found that "the cases involve the identical alleged defect" "lawyers from the same law firms represent the plaintiffs in both cases," "much of the discovery will be the same for both cases," and "Judge Brann has presided over Rice since the case was filed, and he is undoubtedly familiar with the factual and legal issues." *Id.* at *11–12. The court further found that "it would be a complete waste of time and resources to undertake the same discovery in a separate case," and the court agreed with Electrolux that "'there is no need to burden two courts with virtually identical lawsuits.'" *Id.* at *12.

4

Following the transfer of the *Kukich* action to the Middle District of Pennsylvania, Judge Brann ordered the parties, pursuant to a stipulation, to file a consolidated complaint that consolidated the *Rice* and *Kukich* cases. (Blanche Decl. ¶ 11, Ex. 9 ¶ 8(b)). On March 24, 2017, Rice and Kukich filed a consolidated amended class action complaint, seeking to represent a Rule 23(b)(2) class consisting of "[a]ll persons in the United States who own a Microwave with a 'Handle Defect'" (i.e., a microwave's stainless steel handle that, "[w]hen the cooking surface below is in operation . . . heats to excessive temperatures rendering it unfit for use as intended and exposing anyone who touches it to a substantial risk of permanent and/or serious injury."), and two Rule 23(b)(3) classes consisting of "[a]ll persons. . . who own a Microwave with a Handle Defect" in the states of Pennsylvania and Maryland, respectively. (*Id.* ¶ 12, Ex. 10 ¶¶ 2, 66–67.) The consolidated amended class action complaint asserts claims for declaratory relief pursuant to 28 U.S.C. § 2201, *et seq.*, strict liability-design defect and failure to warn, negligent failure to warn, violation of the Magnuson-Moss Consumer Production Warranties Act, 15 U.S.C. § 2301, *et seq.*, breach of implied warranty of merchantability, breach of express warranty, and negligence. (*Id.* Ex. 10 ¶¶ 79–178.)

On April 14, 2017, Electrolux filed a partial motion to dismiss the Rice consolidated amended class action complaint. (Blanche Decl. ¶ 13, Ex. 11.) The motion has been fully briefed but, as of the date of this Order, has not been ruled on by Judge Brann. *See Rice v. Electrolux Home Products, Inc.*, Case No. 4:15-cv-0371-MWB (M.D. Pa.) (docket).

### III. APPLICABLE LAW

Title 28 U.S.C. § 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The purpose of this section is to "prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. The Barge FBL-585,* 364 U.S. 19, 26, 27 (1960)). The party requesting the transfer bears the burden of showing that the balance of conveniences weighs heavily in favor of the transfer in order to overcome the

strong presumption in favor of a plaintiff's choice of forum. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255–56 (1981); *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986).

To support a motion to transfer under § 1404(a), the moving party must first show the proposed transferee court possesses subject matter jurisdiction over the action, the parties would be subject to personal jurisdiction in the transferee court, and venue would have been proper in the transferee court. *Hoffman v. Blaski,* 363 U.S. 335, 344 (1960); *A.J. Indus., Inc. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.,* 503 F.2d 384, 386 (9th Cir. 1974). Once this threshold requirement has been established, the Court next looks at whether the convenience of parties and witnesses, and the interests of justice favor transfer. 28 U.S.C. § 1404(a). According to the Ninth Circuit, relevant factors determining whether transfer will promote convenience and fairness include: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498–99 (9th Cir. 2000) (citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988)).

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org.,* 487 U.S. at 29 (quoting *Van Dusen,* 376 U.S. at 622). In determining whether transfer is proper, the court must "balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Decker Coal,* 805 F.2d at 843 (citations omitted). The court has the broad discretion to address some of these or other factors based on the particular facts of each case. *Bibo v. Federal Express, Inc.,* No. C07-2505 TEH, 2007 WL 2972948, at *2 (N.D. Cal. Oct. 10, 2007). "No single factor is dispositive and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Burgess v. HP, Inc.*, No. 16-CV-04784-LHK, 2017 WL 467845, at *5 (N.D. Cal. Feb. 3, 2017).

## IV. ANALYSIS

Electrolux moves to transfer this case to the Middle District of Pennsylvania, so that it can be decided with the *Rice* consolidated action before Judge Brann. (Doc. 4-1, Memo. of P. & A. in Support of Def.'s Mot. to Transfer ("Memo.") at 1.) According to Electrolux, the consolidated action involves "the same defendant, the same class of products, the same allegations, the same discovery, and the same counsel" as the present action. (*Id.* at 10.) Given the pendency of the *Rice* consolidated action, Electrolux maintains that "[l]itigating this action in the Middle District of Pennsylvania will 'facilitate[] efficient, economical and expeditious pre-trial proceedings and discovery' and prevent duplicative litigation and inconsistent results, while keeping this case in the Eastern District of California would be a waste of time, energy, and money." (*Id.*) (internal citations omitted).

Opposing the motion, Plaintiffs rely primarily on the deference to which their choice of forum is entitled, and assert that Electrolux has "failed to carry its burden to show that the factors collectively weigh in favor of transfer." (Doc. 14, Pls.' Opp'n to Def.'s Mot. to Transfer ("Opp'n") at 4.) Plaintiffs contend that Electrolux sells its microwaves throughout California and has numerous retail and service locations located in and around Modesto and Bakersfield (which are within the Eastern District of California), demonstrating that the harm to Plaintiffs and the statewide putative class members occurred in California and that Electrolux could foresee that harm to Plaintiffs would accrue here. (*Id.* at 7–8.) Plaintiffs maintain that the present case and the *Rice* consolidated action differ in that in the instant action, Plaintiffs are not seeking to certify a nationwide class and assert only California claims, while the *Rice* consolidated action includes no California claims and includes a nationwide putative class. (*Id.* at 3 n.1, 11.) Plaintiffs assert that this action is "distinct" from *Rice*, with "different claims and a different proposed class," and are therefore only "somewhat related." (*Id.* at 11–12.)

**A.     Venue is Proper in the Middle District of Pennsylvania**

Plaintiffs do not contest whether Electrolux would be subject to personal jurisdiction in Pennsylvania, nor is there a dispute over the existence of subject matter jurisdiction in federal

7

court.[2]  Instead, Plaintiffs contend that venue is not proper in the Middle District of Pennsylvania because "no out of state plaintiffs or claims are present" in this case and it is "limited to a California class of consumers asserting California state law claims," with no national class alleged. (Opp'n at 4.)

Plaintiffs' residence and the nature of their claims or the putative class they assert, however, is of no moment. Venue is determined according to the residence of the *defendant*, not the plaintiff. Under 28 U.S.C. § 1391(b)(1), venue lies in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." An entity resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." *Id.* § 1391(c)(2). Pursuant to Pennsylvania law, general personal jurisdiction exists "over a business if the business qualifies as a foreign corporation in the state." *Bors v. Johnson & Johnson*, 208 F. Supp. 3d 648, 652 (E.D. Pa. 2016). Electrolux is registered as a foreign corporation in Pennsylvania. (Blanche Decl. ¶ 15, Ex. 13.) As such, personal jurisdiction exists over Electrolux in Pennsylvania and venue is proper in the Middle District of Pennsylvania. *Accord Kukich*, 2017 WL 345856, at *3–7 (finding that Electrolux submitted to the general jurisdiction of the Pennsylvania courts by registering as a foreign corporation, was subject to suit in Pennsylvania, and, therefore, that the case could have been brought in the Middle District of Pennsylvania).

**B.     Convenience of the Parties**

In evaluating the parties' convenience, the Court considers Plaintiffs' choice of forum, the parties' contacts with the forum, and the contacts relating to Plaintiffs' claims in the chosen forum. *Jones*, 211 F.3d at 498. As an initial matter, Plaintiffs and Electrolux disagree over the amount of weight that should be given to Plaintiffs' choice of forum. In general, a plaintiff's choice of forum is given substantial weight, because courts attach a "strong presumption in favor of [the] plaintiff's choice of forum." *Piper Aircraft,* 454 U.S. at 255; *Decker Coal*, 805 F.2d at 843. However, the deference accorded to a plaintiff's choice of forum may be lessened in a class action. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

---

[2] Plaintiffs' motion to remand was denied by the Court on September 20, 2017.  (Doc. 47.)

Citing *Williams v. WinCo Foods, LLC*, No. 2:12–cv–02690–KJM–EFB, 2013 WL 211246 (E.D. Cal. Jan. 10, 2013), and *Flo & Eddie, Inc. v. Sirius XM Radio Inc.,* No. CV 13–5693 PSG (RZx), 2013 WL 12137591 (C.D. Cal. Dec. 3, 2013), Electrolux asserts: "Plaintiffs' choice of forum is entitled to less weight because Plaintiffs' counsel have filed multiple, related putative class actions in other jurisdictions." (Doc. 20, Def.'s Reply in Support of Mot. to Transfer ("Reply") at 4. *See also* Memo. at 15.) Electrolux notes that Plaintiffs' counsel filed this action in the Eastern District of California after the California subclass, as well as other non-Pennsylvania subclasses, were stricken for lack of standing, and posits that they would not have filed suit in California but for the putative class claims having been dismissed from their first choice of forum—the Middle District of Pennsylvania. (Reply at 4.)

Plaintiffs contend that the Court should afford "substantial weight" to their choice of forum. (Opp'n at 6.) They assert: "Plaintiffs filed this lawsuit in California, their home forum, where they purchased the [m]icrowaves, where the [m]icrowaves remain installed, and where they seek to represent a California state law damages class." (*Id.*)

In *Williams*, the court afforded the plaintiffs' choice of forum "even less weight" because the plaintiffs' attorneys "brought an essentially identical action in another forum on behalf of essentially identical plaintiffs and interests." 2013 WL 211246, at *3. Similarly, the court in *Flo & Eddie, Inc.* "further reduced" the weight given to the plaintiff's choice of forum because the same plaintiff had "also filed a closely-related suit in New York, and ha[d] thus shown that it is willing and able to litigate in that forum." 2013 WL 12137591, at *3. Both cases, while persuasive, are inapposite: unlike *Williams*, the current action does not bring "identical" claims to those alleged in the *Rice* consolidated action—in fact, there is no overlap of claims between the two cases. And, unlike *Flo & Eddie, Inc.*, the present action and the *Rice* consolidated action involve different named plaintiffs. Far more persuasive is Electrolux's argument that Plaintiffs' touting of this action's "significant California connections" is "self-serving" and "disingenuous." It is clear to the Court that the Middle District of Pennsylvania was Plaintiffs' counsel's first choice of forum and, had Judge Brann not stricken the "Other States" subclass in the *Rice* consolidated action—of which Plaintiffs were members—Plaintiffs would have never filed this

9

suit here in the Eastern District of California. Plaintiffs' decision to bring their suit in California is therefore not entitled to substantial weight.

That said, the Court is not persuaded by Electrolux's argument that Plaintiffs' choice should be accorded little weight. Indeed, in both of the cases relied on by Electrolux, the plaintiff's choice of forum was given at least some weight. *See Flo & Eddie, Inc.*, 2013 WL 12137591, at *4; *Williams*, 2013 WL 211246, at *3. The Ninth Circuit has instructed: "In judging the weight to be accorded [the plaintiff's] choice of forum, consideration must be given to the extent of both [the plaintiff's] and the [defendant's] contacts with the forum, including those relating to [the plaintiff's] cause of action." *Lou,* 834 F.2d at 739 (citing *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968)). A plaintiff's choice "is entitled to only minimal consideration" if the Court finds "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter." *Id.*

This case was filed originally in Stanislaus County Superior Court, which is within the Eastern District of California. (*See* Compl.) It is undisputed that Plaintiffs both reside and purchased the microwaves with the allegedly defective handles in this district. Plaintiffs' complaint alleges claims under California state law based on conduct that allegedly occurred within California. (*Id.*) In support of their Opposition, Plaintiffs provide evidence that Electrolux has over 65 retail locations and at least five service locations in and around Modesto and Bakersfield, where Plaintiffs reside. (Doc. 14-1, Declaration of Charles J. Kocher in Supp. of Pls.' Opp'n to Def.'s Mot. to Transfer ("Kocher Decl.") ¶¶ 2–7, Exs. A–E.) In addition, Electrolux claims in its Notice of Removal that it "shipped over 200,000 over-the-range microwaves containing stainless steel handles to retailers located within California for sale to consumers" during the putative class period. (Doc. 1 at ¶ 19.)

This is not an action where all the operative facts occurred elsewhere, or where the forum has no interest in the parties or subject matter. *See Lou,* 834 F.2d at 739. The Court thus concludes that Plaintiffs' choice of forum is entitled to more than minimal consideration, and the convenience of the parties weighs—albeit slightly—against a transfer of venue. *See Cantley v. Radiancy, Inc.*, No. 1:15-cv-01649-LJO–JLT, 2016 WL 4191889, at *4 (E.D. Cal. Aug. 8, 2016);

1 *Flo & Eddie, Inc.*, 2013 WL 12137591, at *4; *Luchini v. CarMax, Inc.*, No. 1:12cv0417 LJO DLB, 2012 WL 2401530, at *3–4 (E.D. Cal. June 25, 2012). *Accord Kukich*, 2017 WL 345856, at *8 (finding plaintiff's decision to file suit against Electrolux in Maryland "is entitled to some weight, but not to substantial weight.").

**C.     Convenience of the Witnesses**

The convenience of witnesses can be one of the most important factors in determining whether a transfer of venue is appropriate. *See Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009); *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 501 (C.D. Cal. 1981). A transfer of venue "may be denied when witnesses either live in the forum district or are within the 100-mile reach of the subpoena power" because individuals cannot be compelled to testify when they reside beyond the boundaries of the court's subpoena power. *Los Angeles Mem'l Coliseum Comm'n,* 89 F.R.D. at 501. Consequently, to show inconvenience for witnesses, "the moving party should state the witnesses' identifies, locations, and content and relevance of their testimony." *Meyer Mfg. Co. Ltd. v. Telebrands Corp.*, No. CIV. S–11–3153 LKK/DAD, 2012 WL 1189765, at *6 (E.D. Cal. Apr. 9, 2012) (citing *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092–93 (N.D. Cal. 2002). *See also Cantley*, 2016 WL 4191889, at *4; *E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994) ("[a]ffidavits or declarations are required to identify key witnesses and a generalized statement of their anticipated testimony").

Electrolux argues that convenience to the witnesses also weighs in favor of transferring this action to the Middle District of Pennsylvania because Electrolux's witnesses who have been deposed in the consolidated action would "likely be subject to depositions for a second time if this matter is not transferred." (Memo. at 12–13.) Electrolux maintains further that it will be inconvenient for expert witnesses to "travel to two different jurisdictions" and to "be subject to multiple depositions" and that "[a]ll witnesses—both fact and expert—would need to attend hearings and trials in two different jurisdictions." (*Id.* at 13.)

Plaintiffs counter that Electrolux's argument regarding the duplicative depositions of "several party witnesses and corporate representatives" is "conclusory" and lacks the detail

necessary for Electrolux to carry its burden to show that this factor weighs in favor of transfer. (Opp'n at 9.) Plaintiffs also point to the fact that Judge Hollander in *Kukich* deemed the factor "neutral" in the context of that case. (*Id.*) (citing 2017 WL 345856, at *9).

Both parties fail to specifically identify any third-party witnesses they may seek to depose or call at trial, the nature of the witnesses' testimony, and the materiality of that testimony to the issues in the case. Because Plaintiff seeks to certify a class composed solely of "persons in California who purchased a Microwave with a stainless steel handle" (Compl.¶ 59), many if not all of potential class members who wish to testify are likely to reside in California, and those witnesses would be inconvenienced by transfer to Pennsylvania. But Plaintiffs fail to address Electrolux's assertion regarding the inconvenience of witnesses, including experts, testifying in two similar actions on opposite sides of the country. Therefore, like Judge Hollander in *Kukich*, the Court concludes that this factor is neutral, weighing neither in favor of nor against transfer. *See Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1215–16 (S.D. Cal. 2013) ("Defendants have not identified any potential witnesses by name or described their testimony. While the Court agrees the majority of witnesses are located in New Jersey, Defendants fail to specifically name or describe their testimony. These components appear to offset, and the Court finds this factor is neutral."); *Wilson v. Conair Corp.*, Civ. No. 1:14–894 WBS BAM, 2014 WL 4249514, at *5 (E.D. Cal. Aug. 27, 2014).

### D.  Interest of Justice

"Consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Tittl v. Hilton Worldwide, Inc.*, No. 1:12–cv–02040–LJO–JLT, 2013 WL 1087730, at *5 (E.D. Cal. Mar. 14, 2013) (quoting *Regents of the University of California v. Eli Lilly and Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997)). Evaluating the interest of justice, the Court considers the ease of access to evidence; familiarity of the forums with the applicable law; and the differences in litigation in each forum, including court congestion and time of trial. *Burke v. USF Reddaway, Inc.,* No. 2:12–cv–02641–KJM–GGH, 2013 WL 85428, at *5 (E.D. Cal. Jan. 8, 2013) (citing *Jones*, 211 F.3d at 498–99). Also, the Court may consider the

12

existence of a pending related action in the forum to which transfer has been proposed. *Cantley*, 2016 WL 4191889, at *5 (citing *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005)). "Importantly, in putative class actions, as in derivative suits, even where the causes of action are not similar but are based on similar allegations pled in a later-filed action, concerns over judicial efficiency are paramount." *Johansson v. Cent. Garden & Pet Co.*, No. C 10–03771 MEJ, 2010 WL 4977725, at *2 (N.D. Cal. Dec. 2, 2010) (citing *Stein v. Immelt,* No. 3:09–CV–808 (RNC), 2010 WL 598925, at *2 (D. Conn. Feb. 18, 2010)).

### 1. Ease of Access to Evidence

Electrolux has not identified any specific evidence that is located in Pennsylvania. Electrolux does note, however, that "the parties already have engaged in substantial discovery" in the *Rice* consolidated action, and it "has already produced over 40,000 pages of documents in Pennsylvania to the same counsel that represents Plaintiffs." (Memo. at 12.) Plaintiffs assert that, to the extent that their allegedly defective microwave handles ultimately need to be viewed by a jury, "it will occur in California." (Opp'n at 11.)

"[A]ny difficulties in accessing the evidence must be more significant than those that can be overcome by the availability of electronic data transfer." *May v. Haas*, No. 2:12–cv–01791–MCE–DAD, 2013 WL 4010293, at *7 (E.D. Cal. Aug. 5, 2013). Here, Electrolux does not specifically identify any of the "substantial discovery," nor does it explain what hardship it would suffer by transporting or producing the "over 40,000 pages of documents" to a different district than where they were produced. *See Wilson v. Walgreen Co.*, No. C–11–2930 EMC, 2011 WL 4345079, at *2 (N.D. Cal. Sept. 14, 2011) (explaining that even where the evidence is stored in hard copy form, courts may look to whether transporting or producing the documents would impose "significant hardship"). Indeed, Electrolux acknowledges that these documents were produced in Pennsylvania to the "same counsel that represents Plaintiffs" here in this district. (Memo. at 12.) This factor is therefore neutral with respect to the question of whether transfer of the action is appropriate.

### 2. Pendency of a Related Action

"The pendency of related actions in the transferee forum is a significant factor in

considering the interest of justice factor." *Jolly v. Purdue Pharma L.P.,* No. 05–CV–1452H, 2005 WL 2439197, at *5 (N.D. Cal. Sept. 28, 2005). Even when the convenience of parties and witnesses weighs against transfer, where there is an action pending with the same or similar issues in another court, that factor will weigh heavily in favor of transfer. *Johansson*, 2010 WL 4977725, at *4 (citing *Hoffman v. Medquist, Inc.*, No. 1:04-CV-3452-WSD, 2005 WL 3095713, at *2 (N.D. Ga. Nov. 16, 2005)). Additionally, "[c]oncerns over judicial efficiency are paramount" when related actions are overlapping putative class actions. *Hawkins*, 924 F. Supp. 2d at 1214 (quoting *Johansson,* 2010 WL 4977725, at *2).

Here, the need to conserve judicial resources weighs heavily in favor of transfer. The Supreme Court has recognized that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co.,* 364 U.S. at 26. With this in mind, Electrolux asserts that while this case is in its "infancy," the parties in the *Rice* consolidated action "have already conducted and continue to conduct significant discovery" pertaining to "critical substantive factual and legal issues, including the design and manufacture of the microwave handles, the nature of the alleged defect, and the extent of the alleged defect—the exact same issues in this case." (Memo. at 10, 12.) Electrolux urges this Court to "do the same" as the Maryland court in *Kukich* and transfer this action so that it can be handled with the *Rice* action before Judge Brann. (Memo. at 1.)

In response, and distinguishing *Kukich*, Plaintiffs contend that the interest of justice weighs against transfer because Plaintiffs are not seeking to certify the same nationwide class as in the *Rice* consolidated action, nor does that action assert claims based on California law that are issue in this case. (Opp'n at 11–12.) Plaintiffs suggest that the two cases "arise from similar facts" and are only "somewhat related." (*Id.* at 12.)

The Court concludes that the pendency of the *Rice* consolidated action in the Middle District of Pennsylvania strongly supports transfer because it would be likely to promote judicial efficiency. Far from being "somewhat related," a comparison of the allegations in the *Rice* consolidated action with those in the present action reveals that they are *virtually identical* in all

14

material respects. Both cases involve the identical product produced by the same defendant, and they present almost identical factual allegations. Both sets of plaintiffs maintain that the stainless steel handles for the Electrolux over-the-range microwave ovens are defective because, when the cooking surface below is in operation, the handle heats to excessive temperatures rendering it unfit for use as intended and exposing anyone who touches it to a substantial risk of permanent and/or serious injury. (*Compare* Compl. ¶ 3 *with* Blanche Decl. ¶ 12, Ex. 10 ¶ 2.)

In addition, contrary to Plaintiffs' characterization, both cases involve several of the same causes of action. As stated above, the causes of action in this case are as follows: (1) violation of California's CLRA; (2) violation of California's UCL, and (3) violation of the Song-Beverly Consumer Warranty Act. (Compl.) In the *Rice* consolidated action, the causes of action are: (1) declaratory relief pursuant to 28 U.S.C. § 2201, *et seq.*; (2) strict liability-design defect and failure to warn; (3) negligent failure to warn; (4) violation of the Magnuson-Moss Consumer Production Warranties Act, 15 U.S.C. § 2301, *et seq.*; (5) breach of implied warranty of merchantability; (6) breach of express warranty; and (7) negligence. (*Id.* ¶¶ 79–178.) Although at first glance, the causes of action pleaded appear slightly different, even where the causes of action are not similar but are based on similar allegations pleaded in a later-filed action, concerns over judicial efficiency are paramount in determining whether to transfer a case upon a motion for transfer. *Johansson*, 2010 WL 4977725, at *4 (citing *Stein,* 2010 WL 598925, at *2).

The Third Cause of Action in the *Rice* consolidated action is similar to Plaintiffs' CLRA claim, in that they both allege that Electrolux failed to provide any warning of the danger of its product, of which they had a duty to disclose (Compl. ¶¶ 67, 70–71; Blanche Decl. ¶ 12, Ex. 10 ¶¶ 112, 116–117.) Plaintiffs' UCL claim is predicated on, *inter alia*, a violation of the Magnuson Moss Warranty Act, which is also at issue in the *Rice* consolidated action. (Compl. ¶¶ 81; Blanche Decl. ¶ 12, Ex. 10 ¶ 121–133 (Fourth Cause of Action).) While the *Rice* plaintiffs allege claims for breach of both express and implied warranty, and in the instant action the Plaintiffs allege only violation of Song-Beverly Consumer Warranty Act for breach of implied warranty, the allegations supporting each cause of action are similar. Each complaint alleges that Electrolux warranted their goods for a purpose, and that they were not, in actuality, fit for that purpose. (Compl. ¶ 94;

15

Blanche Decl. ¶ 12, Ex. 10 ¶¶ 136, 149.) The *Rice* consolidated action alleges a strict product liability claim, while the Plaintiffs here do not allege such a claim. However, the allegations are the same: the products sold by Defendants are unreasonably dangerous and unable to perform as an ordinary consumer would expect. Although Plaintiffs are correct that both complaints allege different class definitions, such differences are insufficient to undermine the increased efficiency and convenience gained by transferring this case to a different venue. *See Cadenasso v. Metro. Life Ins. Co.*, No. 13–cv–05491–JST, 2014 WL 1510853, at *7–8 (N.D. Cal. Apr. 15, 2014); *Johansson*, 2010 WL 4977725, at *2.

Furthermore, the *Rice* consolidated action is far more advanced than this case, as the parties have already engaged in extensive discovery, including depositions and the exchange of expert reports. It seems logical that the "significant discovery" conducted in *Rice* could be combined given the similarity of the allegations in the parties' respective complaints—particularly where both plaintiffs are represented by several of the same lawyers. It is also likely that, if transferred, the Pennsylvania court would be able to consolidate this action with *Rice*—as it did with *Kukich*. Even if this case is not consolidated with *Rice*, the Middle District of Pennsylvania is an appropriate forum because that court, and particularly Judge Brann, is familiar with the facts underlying this dispute and has already facilitated discovery between the two parties. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, No. CV 06–4871 PA SSX, 2006 WL 4568798, at *6 (C.D. Cal. Nov. 30, 2006) (finding transfer appropriate where first-filed court was in the best position "to formulate the most efficient discovery and pretrial plan for the parties to avoid duplicative, unnecessary discovery efforts by both parties").

Finally, not only would transfer to the Middle District of Pennsylvania reduce the cost of discovery, it would also prevent inconsistent judgments. *See Puri v. Hearthside Food Sols. LLC,* No. CV 11–8675–JFW (SSx), 2011 WL 6257182, at *3 (C.D. Cal. Dec. 13, 2011). *See also Mussetter Distrib., Inc. v. DBI Beverage Inc.,* No. CIV. 09–1442 WBS EFB, 2009 WL 1992356, at *5 (E.D. Cal. July 8, 2009) ("In addition to the 'possible consolidation of discovery' and the conservation of 'time, energy and money', centralizing the adjudication of similar cases will also avoid the possibility of inconsistent judgments.") (quoting *In re Genesisintermedia, Inc. Sec.*

*Litig.*, No. 01–9024, 2003 WL 25667662, at *4 (C.D. Cal. June 12, 2003)). Electrolux points out, and the Court agrees, that if this action remains in the Eastern District of California, both this Court and the Middle District of Pennsylvania will be deciding whether to certify classes that include the same individuals and address the same facts. In the *Rice* consolidated action, the plaintiffs seek a declaration on behalf a nationwide injunctive/declaratory relief class consisting of "[a]ll persons in the United States who own a Microwave with a Handle Defect"—a class that includes Plaintiffs here—"that their Microwaves are defective in their workmanship, material, and labeling," and "[t]he Handle Defect makes the handle unfit for its ordinary purpose, and exposes users to serious burn injuries that are unreasonable." (Blanche Decl. ¶ 12, Ex. 10 ¶¶ 66, 85). Here, Plaintiffs' claims here are based entirely on their allegations that their microwaves have defective handles because the handles allegedly "heat[] to excessive temperatures rendering [them] unfit for use as intended and exposing anyone who touches [them] to a substantial risk of permanent and/or serious injury." (Compl. ¶ 3.) Thus, unless this action is transferred, both the Middle District of Pennsylvania and this Court will be deciding precisely same issue: whether Plaintiffs' microwaves are defective and whether Plaintiffs are entitled to relief because of this alleged defect. *See Forest Ambulatory Surgical Assocs., L.P. v. United Healthcare Ins. Co*., No. 5:10–CV–04911–EJD, 2012 WL 1094651, at *3 (N.D. Cal. Mar. 29, 2012) (finding interests of justice favor a transfer where allowing two "closely related" cases to proceed would create a risk of inconsistent rulings); *see also Flo & Eddie, Inc.*, 2013 WL 12137591, at *5 ("[R]epetitious litigation is wasteful and creates a risk of inconsistent decisions.").

The purpose of transfer under § 1404(a) "is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save time and effort of the parties, the attorneys, the witnesses, and the courts." *Papaleo v. Cingular Wireless Corp.,* No. C–07–1234 MMC, 2007 WL 1238713, at *2 (N.D. Cal. Apr. 26, 2007) (citing MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131 (2004)). It is clear that the transferee forum is already quite familiar with the facts and law governing the instant case, and that it and the *Rice* consolidated action involve very similar questions of law and fact, the resolution of which will involve much of the same evidence and testimony. Requiring this Court to start this litigation anew would lead to

17

the "wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co.,* 364 U.S. at 26. *See also Szegedy v. Keystone Food Prods., Inc.*, No. CV 08–5369 CAS (FFMx), 2009 WL 2767683, at *6 (C.D. Cal. Aug. 26, 2009) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.") (quoting *Modavox, Inc. v. AOL LLC,* No. CV 08–05914 SJO (PJWx), 2009 WL 8548648, at *7 (C.D. Cal. Apr. 14, 2009)). The Court thus agrees with Electrolux that the pendency of similar litigation strongly favors transfer to the Middle District of Pennsylvania.

### 3. Familiarity of the Forums with Applicable Law

Plaintiffs contend that California courts are best suited to apply California law. (Opp'n at 9.) There is no dispute that Plaintiffs' claims are all based on California law, including the UCL, the CLRA, and the Song-Beverly Consumer Warranty Act, with which this Court is readily familiar. "'There is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.'" *Van Dusen*, 376 U.S. at 645; *see also Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*, No. C 07–3983 JSW, 2007 WL 4532214, at *6 (N.D. Cal. Dec. 19, 2007) ("The Northern District of California is more familiar with the relevant California state laws that govern the state claims. This factor does not favor transfer to the District of Nevada."). At the same time, however, "federal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State," *Ganezer v. DirectBuy, Inc.*, No. CV 08-8666 GAF (RCx), 2012 WL 12867971, at *5 (C.D. Cal. Jan. 30, 2012), and "courts in [one state] are fully capable of applying [another state's] substantive law," *Hawkins*, 924 F.Supp.2d at 1216 (quoting *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1148 (C.D. Cal. 2009)). *See Foster v. Nationwide Mut. Ins. Co.,* No. C 07–04928 SI, 2007 WL 4410408, *6 (N.D. Cal. Dec. 14, 2007) ("[O]ther federal courts are fully capable of applying California law . . . ."). The Court has no reason to question the ability of the Middle District of Pennsylvania to correctly apply the law of foreign jurisdictions, *see, e.g.*, *Szegedy*, 2009 WL 2767683, at *7, and does not find that this concern outweighs the benefits that

would be gained by having similar issues adjudicated by the same court.

### 4. Court Congestion in Each Forum

The Court must consider "the administrative difficulties flowing from court congestion" when considering the interest of justice. *Decker Coal*, 805 F.2d at 843 (citing *Piper Aircraft*, 454 U.S. at 255). Relative court congestion, however, is only a "minor factor" in the transfer analysis and "this factor alone cannot control the overall balance of this Court's decision" on a motion to transfer. *Royal Queentex Enters. v. Sara Lee Corp.*, No. C–99–4787 MJJ, 2000 WL 246599, at *8 (N.D. Cal. Mar. 1, 2000). "Ultimately, the inquiry centers on whether a trial may be speedier in another court because of its less crowded docket." *Ganezer,* 2012 WL 12867971, at *8 (internal quotation omitted).

Citing the Statistic Tables for the Federal Judiciary, Electrolux notes that for the twelve-month period ending March 31, 2016, the "median time to trial . . . in the Middle District of Pennsylvania is 30.4 months, while the median time to trial in the Eastern District of California was 31.1 months." (Memo. at 13 (citing Federal Judicial Caseload Statistics, available at http://www.uscourts.gov/statistics/table/c- 5/federal-judicial-caseload-statistics/2016/03/31).) A difference of a few months in court congestion does not necessarily weigh in favor of transfer, in contrast to cases where transferring provides a clear time advantage for the disposition of a case. *Compare Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 273–74 (C.D. Cal. 1998) (finding a two-month difference insignificant), *with Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1167 (S.D. Cal. 2005) (finding a 1 year 8 month difference in time to trial to weigh in favor of transfer from the Southern District of California to the Eastern District of Virginia). Here, the less-than-one-month difference is less than the two-month period found insignificant in *Guthy-Renker*. Therefore, the Court concludes that this difference weighs slightly against transfer, but that it "cannot control the overall balance of this Court's decision" to transfer. *Queentex*, 2000 WL 246599 at *8. *But see Cantley, Inc.*, 2016 WL 4191889, at *6 (finding the factor weighed "slightly in favor" of transfer where the median interval between filing to disposition was greater in the transferor court by 0.2 month).

//

### V.     **CONCLUSION AND ORDER**

The Court concludes that the convenience and justice inquiry favors transferring this case. While some of the operative facts underlying this action occurred in California and Plaintiffs wish to litigate in California, on balance, the countervailing considerations substantially outweigh these factors. The differences between the *Rice* consolidated action and this case are not significant enough to outweigh the substantial judicial economy that transfer would accord. As Judge Hollander stated in *Kukich*: "[T]here is no need to burden two courts with virtually identical lawsuits. Rather, this action should be heard by the court that is already familiar with the issues to conserve judicial resources and to prevent inconsistent rulings." 2017 WL 345856, at *12.

Based upon the foregoing, Electrolux has met its burden of demonstrating the transfer is appropriate under 28 U.S.C. § 1404(a). *See Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 279 (9th Cir. 1979). Accordingly, the Court ORDERS[3] that Electrolux's motion to transfer venue to the Middle District of Pennsylvania (Doc. 4) is GRANTED.

IT IS SO ORDERED.

Dated:   **November 2, 2017**                /s/ *Sheila K. Oberto*
                                                                 UNITED STATES MAGISTRATE JUDGE

---

[3] "Because an order transferring venue pursuant to 28 U.S.C. § 1404(a) does not address the merits of the case, it is a nondispositive matter that is within the province of a magistrate judge's authority under 28 U.S.C. § 636(b)(1)(A)." *Pavao v. Unifund CCR Partners*, 934 F. Supp. 2d 1238, 1241 n.1 (S.D. Cal. 2013). *See also Cantley*, 2016 WL 4191889, at *6 n.1.